HEARD NOVEMBER TERM, 1877.

STATE, *ex rel.* BUTTZ, *vs.* COMPTROLLER GENERAL.

A salaried officer against whom judgment of ouster has been pronounced for having accepted an inconsistent office is not entitled to his salary from the time he accepted the inconsistent office until the judgment was pronounced.

This was a petition to the Supreme Court by C. W. Buttz for a writ of *mandamus* to compel the Comptroller General to pay him his salary as Solicitor of the First Circuit. The case is fully stated in the judgment of the Court.

*Buttz*, for petitioner.

*Youmans*, Attorney General, contra.

March 1, 1878. The opinion of the Court was delivered by

WILLARD, C. J. The relator was by the judgment of this Court ousted from the office of Solicitor of the First Circuit on the ground that he had accepted an inconsistent office, namely, member of Congress, (*State* vs. *Buttz, ante* pp. 156–186,) he now demands a writ of *mandamus* to compel payment to him of the salary of that office alleged to have accrued subsequent to the act which has been adjudged to have vacated the office and prior to the judgment of ouster.

To entitle himself to the writ he must show that what he seeks to compel is a specific duty, imposed by law, of a ministerial character, and that it has been refused on demand. It is not disputed that he is entitled to recover if the law imposes on the Comptroller General, the respondent, the absolute duty of drawing his warrant in favor of the relator for the purposes set forth in his suggestion. This depends upon the question whether the relator has a legal right to the salary or emoluments of such office subsequent to the act vacating it but before judgment of ouster. The judgment of this Court referred to determined that the office in question was wrongfully held by the relator from and after the act vacating title to the same, and consequently during the time for which the relator claims the salary attached by law to that officer. The holding, as it regards the office, being wrongful, his demand of the emoluments of the office is of the same character, for it is inconsistent that he should have a right to the emoluments and no right to the office.

The relator advances the broad proposition (citing in support High on Extraordinary Remedies, and certain Missouri cases,) that an officer *de facto* has the right to the salary and emoluments of the office he assumes to hold, though having no legal title. The cases cited by High do not appear to establish any such broad conclusion. They are *Winston* vs. *Moseley*, 35 Mo., 146; *State* vs. *Draper*, 48 Mo., 311; *State* vs. *Draper*, 50 Mo., 358, and *State* vs. *Clark*, 52 Mo., 508. The proposition ruled in these cases is, that when one holding a public office has an apparent right to hold such office, he is entitled to *mandamus* to compel the payment of his salary, notwithstanding it is alleged by the respondent that he has not rightful title to such office, placing the decision on the ground that the Court cannot try the question of title in such a collateral proceeding, and therefore must determine the question according to

the apparent right of the relator.  In the last named case, *State* vs. *Clark,* the Court went to the extent of allowing the *mandamus* even where it appeared that there was a *quo warranto* pending to oust the relator from the office at the suit of the Attorney General. There are remarks made by Ewing, J., in the last named case that go, as it would seem, much beyond the scope of the case that will be noticed hereafter.  It is enough for the purposes of the present case to observe that these cases do not contemplate one like the present, where the question of title has been judicially settled be- tween the same substantial parties adversely to the claims of the relator.

We cannot, however, allow the broad statement made as to these cases and some of the positions assumed and remarks made in them to pass unnoticed, thus seeming to give apparent sanction to their authority, although we are not called upon by the necessities of the present case to affirm or disaffirm the soundness of the basis on which they have been rested.

It may well admit of doubt whether a writ of *mandamus* should be issued directing the payment of the salary of a public officer to one claiming to hold it where it appears that his right is under- going contest in due course of law; where it is considered that, ad- mitting that a question of title cannot be properly tried in this proceeding, where there is a remedy by *quo warranto,* yet that the writ of *mandamus* is not one of right but resting on sound discre- tion of the Court.  In such a case it would seem to be more conso- nant with the principles governing the remedy and the general principles of the law to withhold a remedy that cannot be de- manded of right and cannot, from the nature of the remedy itself, be intelligently applied.  Nor is it clear that in every case where a salary is claimed by one having actual possession of an office and where the title is questioned by the respondent, even though no pro- ceeding is pending to oust the title in a direct way, that the writ should issue.  It is doubtless true that a question of title cannot ordinarily be decided in *mandamus,* but it does not follow that the respondent may not make a case that ought to deter the Court from interfering by *mandamus* where no such direct proceeding is pending.  Cases can be conceived where great wrong might be done by issuing the writ, but it is not incumbent at the present time to enter into a full discussion of that matter.

Should the broad proposition that every *de facto* officer is entitled, as matter of strict legal right, to the salary of the office held by him, without regard to the rightfulness of his possession, then there might be better ground for such a conclusion as that reached by the Missouri cases referred to.

Judge Ewing says, in *State* vs. *Clark:* " The commission issued to the relator invested him with title and is *prima facie* evidence of his right to the office. It gave him the possession and the power to exercise the functions, of which he could be deprived by due process in the manner prescribed by law. He alone is entitled to the emoluments of the office until the State, by a proper proceeding, has reached the authority with which it has invested him." It is clear that this remark is based on the idea that the person holding under a commission issued under the Constitution and laws of Missouri, though without legal title, has more than what is understood by a *de facto* holding, but, on the contrary, has a sort of defeasible " title " that is good against the State and all the world until terminated by due course of law. What may be the effect of a commission under the laws of Missouri need not be considered, but it is certain that a commission works no such effect upon one improperly possessing himself of it in this State.—Richardson, J., in *State* vs. *Billy*, 2 N. & McC., 356.

The proposition referred to does not seem to be reconcilable with many adjudicated cases. We shall merely make a general reference to them.

*Allen* vs. *McNeel*, Mills' Con. R., 459 : In this case one claiming prize money in virtue of his office as mate of a revenue cutter was held to strict proof of his due appointment, and could not recover on that apparent right arising from possession of the office.

Evans, J., in *Kollman* vs. *Ayer*, (5 Stro., 92,) refers to this case as maintaining the proposition that one claiming the emoluments of his office must prove legal title.

In *Fowler* vs. *Beebe* (9 Mass., 231,) it is said that when a public officer is a party to a suit his right to office may be inquired into. No reference was made in this remark to *mandamus*, but to ordinary actions. Although the case, in the mind of the Court, was that of one attempting to justify under authority derived as a public officer, still it is clearly applicable to a case where a public officer seeks to enforce in his own behalf a right dependent upon his exercising a public office.

In *Rex* vs. *Lish* (2 Stra., 1090,) a conclusion was reached that can be best explained upon the idea that, although the acts of officers *de facto* are usually valid as against themselves and as between third persons, they are not valid as against the King.

Possibly the cases of *Rex* vs. *Voulst* (3 Camp., 432,) and our own case of *State* vs. *Heyward* (1 N. & McC., 546,) can be best understood by reference to that principle.

All the authority validating the acts of *de facto* officers without legal right to their offices place the reason of such validation on grounds of public policy, and in no instance that has been found is it placed on the ground of any right arising from the mere fact of the possession of the office, unless the Missouri cases are to be considered as supporting that doctrine.

The motion for the *mandamus* must be denied.

*McIver*, A. J., and *Haskell*, A. J., concurred.